**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| TIMCAST MEDIA GROUP INC. | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| CHRISTOPHER BERTMAN | ) |
| | ) |
| Defendant. | ) |
| | ) |

ELECTRONICALLY
FILED
10/01/2025
U.S. DISTRICT COURT
Northern District of WV

Case No.:   3:25-cv-151 Groh

## COMPLAINT

Plaintiff, Timcast Media Group Inc. ("Timcast" or "Plaintiff"), by way of Complaint against Defendant Christopher Bertman ("Bertman" or "Defendant"), states as follows:

## PRELIMINARY STATEMENT

1.     Timcast employed Defendant as a staff writer for Timcast's news website. Defendant's offer letter explicitly stated that he was an at-will employee. Despite signing a confidentiality agreement with Timcast, and while still employed by Timcast, Defendant also used Timcast's social media accounts to sell sponsorships for a competing media company and wrote news articles for the competing media company without the knowledge or authorization from Timcast.

2.     Indeed, Defendant went so far as to use a pseudonym attempting to avoid detection by Timcast because Defendant knew that he was prohibited from writing articles for a competing website.

#827719 v1

3.    Furthermore, Defendant used Timcast's social media accounts to promote a competing media company to his own financial advantage and to the benefit of Timcast's competitor.

4.    Timcast immediately terminated Defendant's employment after learning that Defendant was competing with Timcast and using its confidential information for use and the benefit of a competitor. This is not pretext to an alleged wrongful termination as the Defendant may claim. Rather, Defendant was terminated for wrongfully competing with Timcast.

5.    Accordingly, Timcast brings this action to recover damages it has suffered caused by Defendant directly competing with Timcast and statutory damages under the Computer Fraud and Abuse Act.

### PARTIES, JURISDICTION AND VENUE

6.    Timcast is a West Virginia corporation with a principal place of business located in West Virginia.

7.    Defendant is an individual residing at 918 Kaufman Avenue, Martinsburg, West Virginia 25404.

8.    The Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331 because there are claims arising out of the Computer Fraud and Abuse Act (18 U.S.C § 1030(g)). The Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C § 1367, as its common law claims are substantially related to the claims within the Court's original jurisdiction and are an inextricable part of the instant case.

9.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant resides in this District and a substantial part of the events giving rise to the claim occurred within this District.

2

#827719 v1

## FACTUAL BACKGROUND

10.    Timcast is a cutting-edge multimedia company, primarily focused on producing and distributing news, commentary, and entertainment content through various media formats such as news articles, podcasts, videos, social media platforms, etc.

11.    Timcast has several social media accounts that it uses to promote its brand and content.

12.    On June 22, 2022, Defendant signed an offer letter from Timcast accepting an offer to work as a Staff Writer at Timcast.[1] The Defendant knew or should have known that he was an at-will employee as it was written in an offer letter he signed stating "employment with Timcast Media Group will be on an at-will basis, which means you and the company are free to terminate the employment relationship at any time for any reason. This letter is not a contract or guarantee of employment for a definitive period of time." *See* Exhibit A.

13.    On September 4, 2022, Defendant commenced his employment with Timcast.

14.    As consideration of being employed by Timcast, Defendant also executed the Confidentiality and Proprietary Rights Agreement ("Confidentiality Agreement"). *See* Exhibit B.

15.    In relevant part the Confidentiality Agreement provides:

> The Employee understands and acknowledges that during the course of employment by the Employer, [he/she] **will have access to and learn about confidential, secret, and proprietary documents, materials, data and other information, in tangible and intangible form**, of and relating to the Employer and its businesses and existing and prospective customers, suppliers, investors and other associated third parties ("Confidential Information"). The Employee further understands and acknowledges that this Confidential Information and the Employer's ability to reserve it for the exclusive knowledge and use of the

---

[1] Certain staff writers for Timcast (including Defendant) had their employment assigned to Subverse, Inc. in or around September 2023 for business purposes not relevant to this action. Subsequently, certain staff writers for Timcast (including Defendant) had their employment assigned back to Timcast in or around October 2024 for business purposes not relevant to this action.

3

#827719 v1

Employer is of great competitive importance and commercial value to the Employer, and that improper use or disclosure of the Confidential Information by the Employee will cause irreparable harm to the Employer, for which remedies at law will not be adequate and may also cause the Employer to incur financial costs, loss of business advantage, liability under confidentiality agreements with third parties, civil damages and criminal penalties.

For purposes of this Agreement, Confidential Information includes, but is not limited to, all information not generally known to the public, in spoken, printed, **electronic** or any other form or medium, relating directly or indirectly to… know-how, trade secrets… work-in-process, **databases**, device configurations, **embedded data, compilations, metadata**, technologies, manuals, records, **articles**, systems, material, **sources of material**, supplier information, vendor information…

*See* Exhibit B at Section 1(a) (emphasis added).

16.    Furthermore, in the Confidentiality Agreement, Defendant agreed and covenanted:

(A) To treat all Confidential Information as strictly confidential;

(B) not to directly or indirectly disclose, **publish**, communicate, or make available Confidential Information, or allow it to be disclosed, **published**, communicated, or made available, in whole or part, **to any entity or person whatsoever** (including other employees of the Employer not having a need to know and authority to know and to use the Confidential Information in connection with the business of the Employer and, in any event, not to anyone outside of the direct employ of the Employer except as required in the performance of any of the Employee's authorized employment duties to the Employer with the prior consent of an authorized officer acting on behalf of the Employer in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent).

*See* Exhibit B at Section 1(b) (emphasis added).

17.    Simply put, Defendant agreed to not disclose any confidential information belonging to Timcast and use any confidential information outside of his employment with Timcast.

18.    Nevertheless, Timcast became aware that Defendant, while on paternity leave from Timcast, was secretly working for a rival media company.

4

#827719 v1

19.      Defendant wrote news articles for The American Beat (the Competitor), a competing media company without prior authorization or knowledge from Timcast. *See* Exhibit C for screenshots of articles written by Defendant for a competing media company.

20.      Indeed, Defendant used both his real name and then a pseudonym "C. Charles" attempting to conceal his identity and nefarious, prohibited, and unlawful activities of writing articles for the Competitor.

21.      Furthermore, without prior knowledge or authorization, Defendant used Timcast's social media accounts to promote the competing media company to his own financial advantage and to the benefit of the Competitor.

22.      Once Timcast became aware that Defendant was writing articles for the Competitor while still Timcast's at-will employed and that he was improperly using Timcast's social media accounts, Timcast immediately terminated Defendant's employment.

23.      Although Defendant was on paternity leave when he was terminated, the sole reason for Defendant's termination was that he was directly competing against his employer, Timcast.

24.      In sum, Defendant wrote numerous articles for the Competitor and used Timcast social media accounts to benefit the Competitor all while still Timcast's at-will employee thereby causing Timcast damages.

## COUNT ONE
### (Computer Fraud and Abuse Act)

25.      Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

5

26.     18 U.S.C. § 1030(a)(4) prohibits anyone who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period."

27.     Defendant knowingly accessed a protected computer thereby exceeding his authorized access to Timcast's computer systems and used Timcast's social media accounts to promote the competing media company to the Defendant's own financial advantage and to the benefit of the Competitor with prior knowledge or authorization of Timcast.

28.     As a result, of the Defendant's actions Timcast has suffered over $5,000 in damages.

**WHEREFORE**, the Plaintiff, demands that judgment be entered into in its favor and against Defendant, and that it be provided the following relief:

A.     Judgment in Timcast's favor for compensatory damages, incidental damages and consequential damages, related to Defendant's unauthorized access to Timcast's computer systems;

B.     Taxed costs, interest and reasonable attorneys' fees;

C.     Pre-judgment interest and post-judgment interest; and

D.     Such other relief as the Court deems just and equitable.

6

## COUNT TWO
### (Breach of Contract)

29.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

30.    Defendant signed the Confidentiality Agreement with Timcast as consideration for his employment with Timcast.

31.    In the Confidentiality Agreement, Defendant agreed to not disclose any confidential information belonging to Timcast and use any confidential information outside of his employment with Timcast.

32.    Defendant breached the Confidentiality Agreement while still Timcast's at-will employee for both his and the Competitor's direct benefit by (a) using Timcast confidential information to write articles for the Competitor; and (b) using Timcast social media accounts for the benefit of the Competitor.

33.    As a result of Defendant's breach of the Confidentiality Agreement, Timcast has suffered damages.

**WHEREFORE**, the Plaintiff, demands that judgment be entered in its favor and against the Defendant, and that it be provided the following relief:

A.    Judgment in Timcast's favor for compensatory damages, incidental damages and consequential damages, including but not limited to payment for loss revenue and other damages associated with Defendant unlawfully using Plaintiff's confidential information;

B.    Taxed costs, interest and reasonable attorneys' fees;

C.    Pre-judgment interest and post-judgment interest; and

D.    Such other relief as the Court deems just and equitable.

7

#827719 v1

## COUNT THREE
### (Breach of Fiduciary Duty)

34.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

35.     Defendant, as an employee of Timcast, owed fiduciary duties to Timcast, including a duty of loyalty.

36.     Defendant breached that duty of loyalty while still Timcast's at-will employee for both his and the Competitor's direct benefit by wrongfully competing with Timcast by (a) writing news articles for the Competitor; (b) using Timcast social media accounts to benefit the Competitor; and (c) caused Timcast to suffer damages by reason of Defendant's use of Timcast confidential information and unauthorized actions of competing with Timcast.

37.     Due to the Defendant's wrongful and unauthorized actions for the sole benefit of himself and the Competitor, Timcast has suffered damages.

**WHEREFORE**, the Plaintiff demands that judgment be entered in its favor and against the Defendant, and that it be provided the following relief:

A.     Judgment in Plaintiff's favor for compensatory damages, incidental damages, and consequential damages;

B.     Taxed costs, interest and reasonable attorneys' fees;

C.     Pre-judgment interest and post-judgment interest; and

D.     Such other relief as the Court deems just and equitable.

#827719 v1

Respectfully submitted,

Date:  September 30, 2025

**Lewis Gianola, PLLC**

*/s/ David M. Jecklin*
David M. Jecklin, Esq.
W.Va. Bar No. 9678
1714 Mileground Road
Morgantown, WV 26505
Phone: 304-291-6300
Fax: 304-291-6307
djecklin@lewisgianola.com
*Attorney for the Plaintiff*

**LEX NOVA LAW, LLC**

/s/ *Jason M. Saruya Esq.*
Jason M. Saruya, Esq.
20000 Horizon Way, Suite 750
Mt. Laurel, NJ 08054
Tel:  267-934-5888/Fax:  856-406-7398
jsaruya@lexnovalaw.com
*Attorneys for Plaintiff*

9

#827719 v1